## FRANCES E. GARNER v. MARY E. HUNTER.

Eastern Section. February 23, 1929.

Petition for Certiorari denied by Supreme Court, May 25, 1929.

Finlay & Campbell, and Goins & Gammon, of Chattanooga, for plaintiff in error.

P. H. Thatch, of Chattanooga, for defendant in error.

OWEN, J.  Frances E. Garner has appealed from a judgment rendered against her in the circuit court of Hamilton county for seventy-five hundred ($7500) dollars in favor of Mary E. Hunter, the wife of Tom Hunter, former trustee of Hamilton county. Mrs. Hunter sued Mrs. Garner, hereinafter called the defendant, for alienation of the affections of plaintiff's husband.

There were three counts to the declaration. By the first count the plaintiff alleged that on the 15th day of November, 1926, the defendant did wrongfully and with the intent to deprive the plaintiff of the affections and the assistance of her husband, Tom Hunter, and did acquire improper influence over him which has been

so used by the defendant that the love and respect of plaintiff's said husband had been wholly alienated and destroyed and she has been deprived of his society, help, etc. The second count in addition to the allegation in the first count, alleged that the defendant had enticed Tom Hunter from his home and she had harbored him against the consent of the plaintiff and that the defendant had wrongfully encouraged plaintiff's husband to remain away from plaintiff. By the third count it was alleged that the defendant, on the 1st day of December, 1926 and on various other days and times had committed adultery with Tom Hunter, thereby alienating and destroying his affections for the plaintiff. The suit was commenced November 1, 1927. The defendant filed a plea of not guilty. Many witnesses testified. At the conclusion of plaintiff's testimony a motion for a directed verdict was made which was overruled; thereupon the defendant and a number of witnesses testified and at the conclusion of all the evidence a motion for a directed verdict was made which was overruled. The court charged the jury and the jury returned a verdict for the court heretofore stated. The defendant seasonably filed a motion for a new trial containing many grounds; this was overruled, the defendant excepted, prayed and was granted an appeal which she perfected and has assigned five errors as follows:

## I.

The court erred in failing to grant the defendant's motion for a new trial based on the failure to direct a verdict in her favor on motion at the close of the plaintiff's testimony, and renewed at the conclusion of all the testimony.

## II.

The court erred in failing to grant the defendant a new trial upon her motion therefor, on the ground that the verdict is not sustained by the evidence and is against the evidence.

## III.

The court erred in refusing to grant defendant's motion for a new trial based upon and complaining of that portion of the charge of the court relating to the allegation of adultery, as follows:

"Plaintiff contends and insists that in consequence of his association and relationship, they were unduly intimate and committed acts of adultery here in Hamilton county, and other places."

## IV.

The court erred in giving in charge to the jury the defendant's special written request as follows:

"If it appears from the evidence that defendant was merely friendly toward aliened, and he of his personal inclination pursued

and sought companionship of the defendant, and further that if the evidence shows no malicious or scheming desire or purpose to solicit the affections of Tom Hunter, then you should find in favor of the defendant.''

And also:

''If it appears that Tom Hunter voluntarily gave his affections to Mrs. Garner, the latter doing nothing wrongfully or maliciously to win them, then you should find for the defendant.''

## V.

The court erred in refusing to sustain the defendant's motion for a new trial, on the ground that the verdict is so large as to evince passion, prejudice or caprice on the part of the jury, and is excessive.

We will dispose of the first two assignments together. It appears that the plaintiff and her husband, Tom Hunter, had been married nearly thirty years. They had grown daughters as a result of this marriage. Tom Hunter had met the defendant about the year 1912. They were employed by the same company, a cotton mill. A few years after this employment and acquaintance, Tom Hunter went into the produce business of Chattanooga. His brother-in-law in Georgia shipped him a car load of watermelons. He borrowed five hundred dollars ($500) from the defendant to help operate his melon business. Sometime later Tom Hunter and the defendant formed a partnership under the style of T. S. Hunter and Company. The defendant invested thirty-five hundred ($3500) dollars in this business. The defendant looked after the office of the produce business, kept the books and Hunter did the selling.

It appears that at this time the defendant moved into the home with Hunter and his wife. The defendant was the mother of a young girl who is now grown and married. This girl lived in the room with her mother at Hunter's. Some other young ladies roomed in the home of Mr. and Mrs. Hunter at the time the defendant lived there. This relation existed until the Hunters sold their home and moved to another place. The business of Hunter and Company, being plaintiff's husband and defendant continued until September 1, 1922, when Hunter became trustee of Hamilton county. The defendant conducted the produce business for about a year when she became Hunter's private secretary and drew a salary of one hundred and fifty dollars ($150) per month from the trustee's office. It appears that the defendant contributed one thousand five hundred ($1500) dollars towards Hunter's campaign expenses when he was elected trustee. Hunter would go by the defendant's home every morning and return in the afternoon taking the defendant to and from the trustee's office to her home. Her home was between the plaintiff's home and the courthouse. Hunter was seen to return

in the automobile with the defendant. At other times he would go into the defendant's home in the early hours of the evening, but it appears that there were always other parties in this home when Hunter would visit the defendant or stop on his way to his own home.

Hunter became a defaulter in his office as trustee, it appears that he became a habitual drunkard, he severed his connections with the plaintiff, left his home sometime after his reelection in 1924. It appears that Hunter was of a very friendly disposition, he employed a number of women assistants in his office and he addressed all of his women helpers in endearing terms. The plaintiff stated that she had heard him call the defendant "honey" one time and only once, she stated she saw her husband go to the defendant's room door when the defendant was rooming in the plaintiff's home and the defendant was partly disrobed; just why he went to the door on this occasion does not appear, but he did not enter the room.

Hunter was out of the state when this cause was tried. We infer from record that Hunter and some of his assistants had been indicted for embezzlement; two of his assistants had been acquitted. As to the charge of adultery there is no evidence. The plaintiff testified that she did not claim that the defendant was guilty of such an act, that she did not know that it was charged in the declaration and that she was not trying to prove that, but she claimed that the defendant robbed her of her husband's love.

We are of the opinion that there is no evidence to sustain the allegation contained in the third count. The defendant denies the allegations and she is strongly corroborated as to her conduct with plaintiff's husband by a number of witnesses, men and women who were employed in the trustee's office and a man and his wife who lived in the same apartment with the defendant. We are of the opinion, however, that from all the facts and circumstances the cause should have been submitted to the jury on the first and second counts. We are of the opinion that the third count should not have been submitted to the jury and that portion of the charge made the basis of assignment number three should not have been charged and this assignment is sustained. The fourth assignment is sustained; there being much proof that the defendant did not voluntarily seek the affections of the plaintiff's husband and if there was any alienation, the husband voluntarily gave his affections to the defendant. Where the defendant does not seek to deprive the complaining spouse of the enjoyment of the relation existing with the one claimed to be alienated, there is no liability for the alienation, there must be some actual effect on the part of the person sought to be held for damages. Under the theory of the

defendant and the evidence introduced by her in support thereof, she was entitled to have this special charge submitted to the jury. R. C. L. volume 13, section 513. It results that the third and fourth assignments of error are sustained and the judgment is reversed. The fifth assignment becomes immaterial as we now view the record.

The plaintiff will pay the costs of this appeal, the cause is remanded to the circuit court of Hamilton county for a new trial.

Heiskell and Senter, JJ., concur.